```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF CONNECTICUT

-------------------------------- x
ALBERTO RIOS,                    :
                                 :
         Petitioner,             :
                                 :
v.                               :
                                 :  Civil No. 3:24-cv-1152 (AWT)
ANGEL QUIROS, COMMISSIONER OF    :
CORRECTION,                      :
                                 :
         Respondent.             :
-------------------------------- X
```

## RULING ON MOTION TO DISMISS

Petitioner Alberto Rios filed a petition for a writ of habeas corpus pro se against respondent Commissioner of Correction Angel Quiros, challenging the execution of his sentence pursuant to a State court judgment. He claims his sentence is being executed in violation of the Ex Post Facto Clause of the United States Constitution. See U.S. Const., Art. I, § 10, cl. 1. Rios purports to bring this action pursuant to 28 U.S.C § 2241, but because he is a State prisoner claiming that he is in custody in violation of the Constitution of the United States, the court treats his habeas petition as one brought pursuant to 28 U.S.C. § 2254. See Cook v. N.Y. State Div. of Parole, 321 F.3d 274, 277 (2d Cir. 2003) ("[I]f an application that should be brought under 28 U.S.C. § 2254 is mislabeled as a petition under section 2241, the district court must treat it as a section 2254 application instead.").

The respondent has moved to dismiss the petition under Federal

1

Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. For the reasons that follow, the respondent's motion to dismiss is being granted.

## I. BACKGROUND

The petitioner "was convicted, in connection with conduct occurring on April 22, 2013, of assault in the first degree in violation of [Connecticut] General Statutes § 53a-59 (a) (1), assault in the second degree in violation of [Connecticut] General Statutes § 53a-60, and three counts of reckless endangerment in the first degree in violation of [Connecticut] General Statutes § 53a-63." Rios v. Comm'r of Corr., 224 Conn. App. 350, 354 (2024). "On May 15, 2014, he was sentenced to twenty years of incarceration, suspended after fourteen years, followed by five years of probation." Id.

Connecticut General Statutes § 18-98e, which governs the risk reduction earned credits ("RREC") program, provides, in relevant part:

> (a) Notwithstanding any provision of the general statutes, any person sentenced to a term of imprisonment for a crime committed on or after October 1, 1994, and committed to the custody of the Commissioner of Correction on or after said date, [with certain exceptions], may be eligible to earn risk reduction credit toward a reduction of such person's sentence, in an amount not to exceed five days per month, at the discretion of the Commissioner of Correction for conduct as provided in subsection (b) of this section occurring on or after April 1, 2006.

2

> (b) An inmate may earn risk reduction credit for adherence to the inmate's offender accountability plan, for participation in eligible programs and activities, and for good conduct and obedience to institutional rules as designated by the commissioner, provided (1) good conduct and obedience to institutional rules alone shall not entitle an inmate to such credit, and (2) the commissioner or the commissioner's designee may, in his or her discretion, cause the loss of all or any portion of such earned risk reduction credit for any act of misconduct or insubordination or refusal to conform to recommended programs or activities or institutional rules occurring at any time during the service of the sentence or for other good cause. If an inmate has not earned sufficient risk reduction credit at the time the commissioner or the commissioner's designee orders the loss of all or a portion of earned credit, such loss shall be deducted from any credit earned by such inmate in the future. . . .
>
> (f) The commissioner shall adopt policies and procedures to determine the amount of credit an inmate may earn toward a reduction in his or her sentence and to phase in the awarding of retroactive credit authorized by subsection (c) of this section.

Conn. Gen. Stat. § 18-98e.

At issue here is one of those policies and procedures adopted by the Commissioner, Administrative Directive 4.2A. With respect to Administrative Directive 4.2A, the Connecticut Appellate Court explained:

> The administrative directive of the Department of Correction (department) concerning the earning of RREC that was in effect at the time the petitioner committed the underlying offenses was administrative directive 4.2A (2013 administrative directive). Conn. Dept. of Correction, Administrative Directive 4.2A (effective March 22, 2013). That administrative directive provided that risk reduction credit is "[t]ime awarded at the discretion of the [respondent] or designee at the rate of five (5) days per month for participation in programs or activities, good conduct and obedience to departmental rules, unit and/or

3

> program rules in accordance with RREC guidelines as determined by the [respondent] or designee." Administrative Directive 4.2A (3) (D) (effective March 22, 2013).
>
> Pursuant to the 2013 administrative directive, once an incarcerated individual signs an offender accountability plan and adheres to the rules and regulations, RREC is calculated and awarded via the department's computer system at a rate of five days per month. The petitioner earned RREC at the rate of five days per month under the 2013 administrative directive.

Rios, 224 Conn. App. at 354-55.

"On February 1, 2016, the 2013 administrative directive was amended." Id. at 355. "That amendment, which is reflected in administrative directive 4.2A (2016 administrative directive), provides that '[a]n inmate may earn RREC at the rate of three (3) days per month as an Overall Level 4 inmate, four (4) days per month as an Overall Level 2 or 3 inmate and five (5) days per month as an Overall Level 1 inmate or if the inmate is being supervised in the community on early release supervision throughout the sentenced portion of the inmate's incarceration.'" Id. (quoting Conn. Dept. of Correction, Administrative Directive 4.2A (6) (effective February 1, 2016)).

"The petitioner had been earning five days of RREC under the 2013 administrative directive." Id. at 355. "Under the 2016 administrative directive, the petitioner began earning RREC at a rate of three days per month due to his risk classification as an overall level 4 inmate." Id. "On February 1, 2018, the

4

petitioner's classification changed to an overall level 3 inmate, thereby allowing him to earn RREC at a rate of four days per month." Id. "The petitioner earned approximately forty-six fewer days of RREC than he would have received from March 1, 2016, to February 1, 2018, if the 2013 administrative directive had been applied to him during that time period." Id. "From February 1, 2018, until the time of the habeas proceedings, the petitioner earned approximately fifty-eight fewer days of RREC pursuant to the 2016 administrative directive." Id. at 355-56.

"On December 21, 2020, the petitioner filed a petition for a writ of habeas corpus, alleging that 'the retroactive application of this [2016] administrative [directive] violates the prohibition against ex post facto laws contained in the [United States] constitution because it dictates a longer period of incarceration and postpones his parole eligibility date to a date later than was originally projected.'" Id. at 356 (alterations in original). On December 20, 2022, the Superior Court granted the petitioner's motion for summary judgment, determining that there existed no genuine disputes of material fact and that the petitioner was entitled to judgment as a matter of law. See Rios v. Comm'r of Corr., No. CV21-5000862-S, 2022 WL 17959385, at *14 (Conn. Super. Ct. Dec. 20, 2022).

The respondent appealed to the Appellate Court of Connecticut. On March 26, 2024, the Appellate Court vacated,

5

reversed, and remanded the case to the Superior Court "with direction to enter judgment denying the petitioner's motion for summary judgment and granting the respondent's motion to dismiss for failure to state a claim upon which relief may be granted." Rios, 224 Conn. App. at 379. On May 14, 2024, the Supreme Court of Connecticut denied Rios' petition for certification to appeal from the Appellate Court. See Rios v. Comm'r of Corr., 349 Conn. 910 (2024).

## II.  LEGAL STANDARD

"A motion to dismiss a habeas petition is reviewed under the same standard as a motion to dismiss a civil complaint under Fed. R. Civ. P. 12(b)(6)." Pittman v. Cook, No. 3:20-CV-626 (VAB), 2020 WL 2840256, at *3 (D. Conn. June 1, 2020) (citing Purdy v. Bennett, 214 F. Supp. 2d 348, 353 (S.D.N.Y. 2002)). Accord Dull v. Comm'r of Corr., No. 3:23-CV-1220 (SVN), 2024 WL 1576609, at *3 (D. Conn. Apr. 11, 2024); Spiegelmann v. Erfe, No. 3:17-CV-2069 (VLB), 2018 WL 1582549, at *1 (D. Conn. Mar. 29, 2018).

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The court's task is assessing whether the plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial

6

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When interpreting the allegations in a pro se complaint, the court applies "less stringent standards than [those applied to] formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). "[T]he submissions of a pro se litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (citation and italics omitted).

### III. DISCUSSION

The petitioner claims that application to him of the 2016 amendment to Administrative Directive 4.2A violated the Ex Post Facto Clause in Article I, Section 10 of the United States Constitution by reducing the rate at which he could earn discretionary risk-reduction earned credits during the remainder of his term of imprisonment. The respondent argues that the petition must be dismissed because the Administrative Directive is not a law within the meaning of the Ex Post Facto Clause. The court agrees.

"The Constitution prohibits both federal and state governments from enacting any 'ex post facto Law.'" Peugh v. United States, 569 U.S. 530, 538 (2013) (quoting Art. I, § 9,

cl. 3; Art. I, § 10). "The phrase 'ex post facto law was a term of art with an established meaning at the time of the framing.'" Id. (quoting Collins v. Youngblood, 497 U.S. 37, 41 (1990)).

> In Calder v. Bull, [3 U.S. 386 (1798),] Justice Chase reviewed the definition that the term had acquired in English common law:
>
>> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

Peugh, 569 U.S. at 539 (quoting Calder, 3 U.S. at 390). The petitioner contends that the 2016 amendment to Administrative Directive 4.2A changed the punishment, inflicting a greater punishment, than the law in effect at the time he committed his offense.

"[T]wo critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." Weaver v. Graham, 450 U.S. 24, 29 (1981) (italics omitted). The Supreme Court's "precedents make clear that the coverage of the Ex Post Facto Clause is not limited to legislative acts[.]" Peugh, 569 U.S. at 545.

8

Thus, the Ex Post Facto Clause is not implicated unless a "criminal or penal law" within the meaning of the Ex Post Facto Clause is at issue; nor it is implicated unless application of that law retroactively disadvantages the offender. Weaver, 450 U.S. at 29. Here, it is undisputed that application of the 2016 version of Administrative Directive retroactively disadvantaged Rios, but the Administrative Directive is not a law within the meaning of the Ex Post Facto Clause.

In Barna v. Travis, 239 F.3d 169 (2d Cir. 2001), state prisoners sued the Chairperson of the New York State Division of Parole and others, claiming, inter alia, that application to them of State parole procedures adopted after they were incarcerated violated the Ex Post Facto Clause. With respect to the parole procedures at issue, the court found:

> The State statute creates a parole board that has the power and the duty to determine "which inmates serving an indeterminate . . . sentence of imprisonment may be released on parole . . . and when."

Barna, 239 F.3d at 171 (quoting N.Y. Exe. Law § 259-c.1). The court held:

> The *Ex Post Facto* Clause does not apply to guidelines that do not create mandatory rules for release but are promulgated simply to guide the parole board in the exercise of its discretion. See, e.g., DiNapoli v. Northeast Regional Parole Commission, 764 F.2d 143, 145-47 (2d Cir.), cert. denied, 474 U.S. 1020 (1985). Such guidelines "are not 'laws' within the meaning of the ex post facto clause." Id. at 147; Beltempo v. Hadden, 815 F.2d 873, 875 (2d Cir. 1987) (quoting DiNapoli).

9

Id. at 171.

At issue in DiNapoli v. Northeast Regional Parole Commission, 764 F.2d 143 (2d Cir. 1985), which is cited in Barna, was the retroactive application of Federal parole guidelines. The court held:

> [B]ecause under this court's precedents the federal parole guidelines applied to appellant are not "laws" within the meaning of the ex post facto clause, Priore v. Nelson, 626 F.2d 211, 217 (2d Cir. 1980); Shepard v. Taylor, 556 F.2d 648, 654 (2d Cir. 1977) (dictum), appellant's claim is without merit. In both Priore and Shepard we cited with approval the Sixth Circuit's opinion in Ruip v. United States, 555 F.2d 1331 (6th Cir. 1977), which states: "These guidelines are not law, but guideposts which assist the Parole Commission . . . in exercising its discretion."

DiNapoli, 764 F.2d at 146.

Here, under Conn. Gen. Stat § 18-98e(a), certain inmates may be eligible to earn risk reduction credits "at the discretion of the Commissioner of Correction," and Administrative Directive 4.2A was adopted pursuant to Conn. Gen. Stat. § 18-98e(f), which directs the Commissioner to "adopt policies and procedures to determine the amount of credit an inmate may earn toward a reduction in his or her sentence." In Rios's appeal to the Connecticut Appellate Court, the court found:

> It is undisputed that the 2016 administrative directive is an internal policy within the department that was issued and adopted by the respondent in his sole discretion pursuant to § 18-98e (f) to determine the amount of RREC inmates may earn. The 2016 administrative directive is a discretionary internal policy that provides inmates with

10

> notice detailing the respondent's current position regarding the rate at which inmates "may earn RREC" according to the inmate's overall security risk level. . . . Nothing in the 2016 administrative directive indicates that the respondent cannot deviate from it.

Rios, 224 Conn. App. at 363. None of the arguments made by the petitioner call into question this undisputed fact. There was no change in Section 18-98e in 2016, only an amendment to an administrative directive. Both before and after that amendment the Commissioner (or a designee) had discretion, within the statutory parameters of up to five days and certain categories of conduct (i.e. adherence to an accountability plan, participation in eligible programs and activities, and obedience to institutional rules) to determine the amount of credit an inmate may earn, and also to cause the loss of all or any part of such credit for certain reasons, including "other good cause", and that amendment provided notice to inmates of the Commissioner's current position. See Prater v. U.S. Parole Comm'n, 802 F.2d 948, 954 (7th Cir. 1986)("If the law is unchanged and no legislative regulations are promulgated, a mere change in enforcement methods, priorities, or policies, written or unwritten -- a change within the scope of the executive branch's discretion in enforcing the laws passed by Congress -- does not activate the prohibition against ex post facto laws."). Like Barna, Prater cites to DiNapoli with approval. See id. at

11

951 (citing cases from other Circuits that have utilized similar reasoning).

Consequently, under Barna and DiNapoli, Administrative Directive 4.2A is not a law within the meaning of the Ex Post Facto Clause. See Connelly v. Lantz, 366 Fed. App'x 194, 195 (2d Cir. 2010) ("[I]n any event, the ex post facto clause does not apply to the Department's guidelines or administrative directives. See Barna, 239 F.3d at 171 (finding that 'Ex Post Facto Clause does not apply to guidelines that do not create mandatory rules for release but are promulgated simply to guide the parole board in the exercise of its discretion'); DiNapoli, 764 F.2d at 147 (finding that 'federal parole guidelines ... are not laws within the meaning of the ex post facto clause')."). See also Fonck v. Semple, No. 3:18-cv-1283 (KAD), 2019 WL 1763081, at * (D. Conn. Apr. 22, 2019) ("Nor does [the Ex Post Facto Clause] apply to Department of Correction guidelines or administrative directives." (citing Connelly, 366 Fed. App'x at 195; Barna, 239 F.3d at 171)).

The respondent argues that:

> [t]he petitioner's claim is . . . controlled by the Second Circuit's decision in Abed v. Armstrong, 209 F.3d 63 (2d Cir. 2000), which held squarely that restricting a prisoner's ability, after his date of offense, to earn discretionary sentence credits, like RREC, does not violate the *ex post facto* clause because such credits are – and always have been – purely discretionary.

12

Respondent's Mem. in Support of Mot. to Dismiss (ECF No. 10-1) ("Respondent's Memorandum") at 9-10. But in Abed the question of whether Administrative Directive 4.2A is a law for purposes of the Ex Post Facto Clause was not presented, and the court did not address it. Rather, the appellant had argued "that the Directive effectively lengthened his sentence and therefore violates the Ex Post Facto Clause." Abed, 209 F.3d at 65. In addressing the argument presented by the appellant, the court explained that Abed had erroneously assumed that "before the Directive automatically entitled all inmates to be eligible to earn good time credit", and explained that, in addition, the administrative directive had not been applied retroactively to him. Id. at 66.

The respondent also cites to Abed for the proposition that "restricting a prisoner's ability, after his date of offense, to earn discretionary sentence credits, like RREC, does not violate the ex post facto clause because such credits are -- and always have been -- purely discretionary." Respondent's Memorandum at 9-10. However, if the rules setting forth the eligibility requirements in question are a law within the meaning of the Ex Post Facto Clause, "[t]he presence of discretion does not displace the protections of the Ex Post Facto Clause[.]" Garner v. Jones, 529 U.S. 244, 253 (2000).

13

The petitioner contends "that the Connecticut Appellate Court's decision in Rios v. Commissioner of Correction, 224 Conn. App. 350 (2024) was . . . rejected by the Connecticut Supreme Court in Breton v. Commissioner of Correction, 330 Conn. 462 (2018) . . . ." Pet'r's Opp'n to Mot. to Dismiss (ECF No. 14) ("Opposition") at 4. However, at issue in Breton was "the retroactive application to [the petitioner in that case] of a 2013 amendment to General Statutes (Rev. to 2013) § 54-125a . . . ." Rios, 224 Conn. App. at 363 n.5. As explained by the Connecticut Appellate Court,

> Breton is not applicable to the present case. First, Breton involved a statute governing parole eligibility, which pursuant to "firmly established" precedent is "part of the law annexed to the crime for ex post facto clause purposes." (Internal quotation marks omitted.) [330 Conn.] at 472. The present case, however, involves an administrative directive that does not satisfy the preliminary hurdle of being subject to the ex post facto clause prohibition because it does not constitute a law within the meaning of that clause.

Rios, 224 Conn. App. at 363 n.5.

The petitioner also argues that the Connecticut Appellate Court's decision "overlooks the 'as-applied' doctrine established in Garner v. Jones, 529 U.S. 244 (2000)." Opposition at 4. He contends that "[i]n Garner, the Supreme Court ruled that a change in internal policy could violate the ex post facto clause if it creates a 'substantial risk' of longer

14

incarceration." Id. (quoting Garner, 529 U.S. at 257-59). However, the petitioner misreads Garner.

In Garner, the Court "granted certiorari to decide whether the retroactive application of a Georgia law permitting the extension of intervals between parole considerations violates the Ex Post Facto Clause." Garner, 529 U.S. at 246. The Court stated, "[t]he Court of Appeals found that retroactive application of the change in the law was necessarily an ex post facto violation. In disagreement with that determination, we reverse its judgment and remand for further proceedings." Id.

The opinion of the Court addressed a Georgia statute, Ga. Code Ann. § 42-9-45(b) (1982), and a provision in the Georgia Rules and Regulations, Ga. Rules & Regs., Rule 475-3-.05(2) (1985). See id. at 247. The Court stated, with respect to the decision of the Court of Appeals:

> The Court of Appeals recognized that the Parole Board would set a new parole review date three years or more into the future (up to eight years) only where it concludes that "'it is not reasonable to expect that parole would be granted'" sooner. [Jones v. Garner, 164 F.3d 589, 594 (11th Cir. 1999).] The court thought this policy insufficient, however, because, unlike the statute in [California Dep't of Corr. v. Morales, 514 U.S. 499, (1995)], it does not require the Board "to make any particularized findings" and is not "carefully tailored." 164 F.3d, at 594-595. The court also recognized that the Board's policy permitted it to reconsider any parole denials upon a showing of a "change in circumstance[s]" or upon the Board's receipt of "new information." The court deemed the policy insufficient, however, stating that "[p]olicy statements, unlike regulations are unenforceable and easily changed,

15

and adherence to them is a matter of the Board's discretion." Garner, 529 U.S. at 249. The Court stated, "[t]he Court of Appeals erred in not considering the Board's internal policy statement." Id. at 256. Thus, the opinion of the Court shows that the analysis with respect to the Ex Post Facto Clause was not being applied to an internal policy statement. In fact, while it appears to be undisputed that the Ex Post Facto Clause applied to the Georgia statute and the Georgia Rules and Regulations, the language in the opinion suggests that the internal policy statements are not subject to the Ex Post Facto Clause.

The petitioner also relies on United States v. Sweeney, 715 F.Supp.2d 565 (S.D.N.Y. 2010). He states that there the court "warned that applying advisory guidelines retrospectively could create a substantial risk of lengthier incarceration, which would constitute a potential ex post facto violation." Opposition at 4-5. Sweeney is inapposite.

At issue in Sweeney was the retroactive application of an amendment to the United States Sentencing Guidelines. The court explained:

> Under the United States Sentencing Guidelines (the "Guidelines") in effect at the time he committed the crimes, his sentencing range would have been 27 to 33 months. U.S.S.G. § 2G2.2 (2002). But under the current version of the Guidelines, the applicable range is nearly three times higher -- 78 to 97 months. The difference

16

    results from a five-level increase in the base offense level for distribution of child pornography, see U.S.S.G. § 2G2.2(a) (2009), and a five-level enhancement created in 2003 for offenses involving 600 or more illegal images. Id. § 2G2.2(b)(7)(D). Federal statute requires application of the current Guidelines. 18 U.S.C. § 3553(a)(4)(A)(ii).

Sweeney, 715 F.Supp.2d at 566-67. The court then explained that "[t]he issue is whether that statute, as applied to Sweeney, is an unconstitutional ex post facto law." Id.

    Three years after Sweeney, the Supreme Court held in Peugh v. United States, 569 U.S. 530 (2013), that retroactive application of more onerous Sentencing Guidelines was a violation of the Ex Post Facto Clause. As in Sweeney, the statutory directive in 18 U.S.C. § 3553(a) was the context for the analysis:

> Under 18 U.S.C. § 3553(a)(4)(A)(ii), district courts are instructed to apply the Sentencing Guidelines issued by the United States Sentencing Commission that are "in effect on the date the defendant is sentenced." The Sentencing Guidelines reiterate that statutory directive, with the proviso that "[i]f the Court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the [E]x [P]ost [F]acto [C]lause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." U.S.S.G. §§ 1B1.11(a), (b)(1) (Nov. 2012). Whether the Ex Post Facto Clause was violated by the use of the more onerous Guidelines in effect on the date of Peugh's sentencing is the question presented here.

Peugh, 569 U.S. at 537-38. The Court observed that "[t]he Government . . . argues, in essence, that the Guidelines are too much like guideposts and not enough like fences to give rise to an *ex post facto* violation", and it found this argument

17

unpersuasive. Id. at 547. Justice Thomas wrote a dissenting opinion but was also of the view that a material consideration was whether the Sentencing Guidelines are "flexible guideposts" which inform a sentencing judge's discretion. Id. at 555 (Thomas, J., dissenting). See id. ("Rather, the Guidelines are 'flexible guideposts' which inform the district courts' discretion. Accordingly, their retroactive application cannot constitute a violation of the Ex Post Facto Clause.").

In contrast to the Sentencing Guidelines, there is no statutory directive with respect to the use of Administrative Directive 4.2A specifically, or the administrative directives in general. Rather, there is a statutory directive to the Commissioner of Correction to use his or her discretion with respect to a person's eligibility to earn risk reduction earned credit of up to five days per month, and an additional directive to adopt policies and procedures. Administrative Directive 4.2A is an "internal policy" used by the Department of Correction to inform it in the exercise of its discretion in awarding risk reduction earned credits and subject to being changed at the discretion of the Commissioner.

## IV. CONCLUSION

For these reasons, the respondent's motion to dismiss the petitioner's application for a writ of habeas corpus (ECF No. 10) is hereby GRANTED. The Clerk shall close this case.

It is so ordered.

Signed this 11th day of August 2025, at Hartford, Connecticut.

                                          /s/    AWT
                                      Alvin W. Thompson
                              United States District Judge